IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SANTA FE ALLIANCE FOR PUBLIC HEALTH
AND SAFETY; ARTHUR FIRSTENBERG; and
MONIKA STEINHOFF,

      Plaintiffs,

vs.                                                                                     Civ. No. 18-1209 KG/JHR

CITY OF SANTA FE, NEW MEXICO and
HECTOR BALDERAS, Attorney General of
New Mexico; and the UNITED STATES OF AMERICA,

      Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant City of Santa Fe's Amended Motion

to Dismiss for Failure to State a Claim, (Doc. 21), filed February 11, 2019; Plaintiffs' response to

Defendant City of Santa Fe's Motion to Dismiss, (Doc. 22), filed February 25, 2019; Defendant

City of Santa Fe's reply, (Doc. 25), filed March 11, 2019; and Plaintiffs' surreply, (Doc. 38),

filed April 10, 2019.  Also before the Court is Defendant United States' Motion to Dismiss,

(Doc. 46), filed May 31, 2019; Plaintiffs' response to the United States' Motion to Dismiss,

(Doc. 56), filed July 8, 2019; Defendant United States' reply, (Doc. 57), filed July 31, 2019;

Plaintiffs' surreply, (Doc. 61), filed August 7, 2019; and Plaintiffs' Notice of Supplemental

Authority, (Doc. 71), filed January 21, 2020.  Having considered the Motions to Dismiss, the

accompanying briefs, and the relevant law, the Court grants both Motions to Dismiss.[1]

---

[1] Because Defendants move for dismissal on substantially similar bases and incorporate each
other's arguments, the Court considers the motions together.

I.      *Background*

Plaintiffs are residents of the City of Santa Fe who allege they have been injured by radio frequency (RF) waves emitted by wireless telecommunications facilities, such as cell towers and antennae that connect cell phones to the broader telecommunications network for calls and internet access.  (Doc. 19) at 1-15.  They state RF emissions (RFEs) are detrimental to human health and lead to increases in cancer, neurological and immunological disorders, and other diseases and symptoms.  Plaintiffs also assert that RFEs harm the environment, causing changes in animal behavior, decreases in reproduction, increases in mortality, and negative impacts to the health of both animals and plants.  *Id.*

Plaintiffs bring this action to challenge federal, state, and city laws regarding the permitting and regulation of wireless telecommunications infrastructure.  Specifically, Plaintiffs challenge: (1) the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7)(B)(iv)-(v) (Section 704), which prohibits states and municipalities from considering the environmental effects of RFEs when making siting decisions for wireless telecommunications facilities; (2) the City of Santa Fe's repeal of land use regulations and notice requirements regarding RF emitting telecommunications facilities (Ordinance Nos. 2016-42 and 2017-18); (3) three executive Proclamations issued by the Mayor of Santa Fe temporarily suspending the city's Land Development Code with respect to telecommunications properties on city-owned property; and (4) the State of New Mexico's Wireless Consumer Advanced Infrastructure Investment Act (WCAII), NMSA 1978, §§ 63-9I-4(C) and 63-9I-5(B) (Repl. Pamp. 2018), which permits RF emitting antennae and supporting structures in public rights-of-way.  *Id.* at 2-3.

Plaintiffs argue these laws "remove all public protection from injurious facilities in the public right-of-way, infringe on the public's right to speak about a danger to their own health,

eliminate all public participation into the siting of such facilities, and deprive injured parties of any remedy for their injuries." *Id.* at 14.  Therefore, Plaintiffs "seek a declaration that these laws, and any other laws that may be enacted by their City, their State, or the United States, that would deprive them of any means of protecting themselves from RF radiation and of any remedy for injury by such radiation, are unconstitutional, and to enjoin enforcement of these laws." *Id.* at 15.

Plaintiffs assert the Court has jurisdiction over their federal claims under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgement Act), and 28 U.S.C. § 1343(a)(3) (civil rights claims), and that the Court may exercise supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367.  *Id.* at 22-23.  Plaintiffs bring a total of twenty-two claims under federal and state law alleging violations of the United States and New Mexico Constitutions, New Mexico State Statutes, and Santa Fe's City Code and Charter.  *Id.* at 37-67.  Plaintiffs ask the Court to enjoin Defendants from enforcing Chapter 27 as amended by Ordinance Nos. 2016-42 and 2017-18, the WCAIIA, and Section 704 of the TCA. Plaintiffs also ask the Court to prohibit Defendants from granting any additional franchises and operating any cell towers or antennae erected under existing franchises or the Mayor's proclamations.  *Id.* at 67-68.  Finally, Plaintiffs ask the Court to enjoin the United States "from adopting or enforcing any law that prohibits States or local governments, with respect to wireless telecommunications facilities, from enforcing land use regulations in the public rights-of-way." *Id.* at 68.

Defendants move to dismiss all of Plaintiffs' claims for lack of standing and for failure to state a claim under Fed. R. Civ. P. 12(b)(1) and (b)(6).  (Docs. 21 and 46).

II.     *Statutory and Legal Framework*

The Telecommunications Act of 1996 (TCA) created uniform regulations for the wireless industry and vested enforcement and regulatory authority in the centralized Federal Communications Commission (FCC).  47 U.S.C. § 151.  Section 704 of The TCA, codified at 47 U.S.C. § 332(c)(7), preserves local government control over "decisions regarding the placement, construction, and modification of personal wireless services facilities," but places several limitations on that power.  47 U.S.C. §§ 332(c)(7)(A) and (B); *see also FCC v. League of Women Voters*, 468 U.S. 364, 376 (1984) (explaining the commerce clause confers on Congress the authority to regulate telecommunications).  The limiting provision at issue here is clause iv, which prohibits local governments from regulating "the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the [FCC's] regulations concerning such emissions."  47 U.S.C. § 332(c)(7)(B)(iv).

Chapter 27 of the Santa Fe City Code regulates telecommunications facilities in the City of Santa Fe.  On November 9, 2016, the City adopted Ordinance 2016-42 to amend Chapter 27 to, in part, authorize franchisees to use public rights-of-way to provide telecommunications services.  Ordinance 2016-42 (amending SFCC 1987 § 27-2.4(D) (2017)).  On August 30, 2017, the City adopted Ordinance 2017-18, which repealed many franchise application requirements in order to streamline the land use review process for telecommunications facilities in public rights-of-way.  Ordinance 2017-18 (amending SFCC 1987 §§ 27-2.19(C), (E), and (G) (2017)).  Similarly, the WCAIIA exempts both new antennae and supporting structures for antennae from land use review.  NMSA 1978, §§ 63-9I-4(C) and 63-9I-5(B) (Repl. Pamp. 2018).

4

In addition, on November 21, December 13, and December 26, 2017, the City Mayor issued Proclamations of Emergency due to "insufficient telecommunications capacity in the City, which have caused or are causing danger, or injury, or damage to persons and property within the City." (Docs. 19-5, 19-6, 19-7). Through these proclamations, the Mayor authorized the installation of temporary or mobile wireless telecommunications facilities on City of Santa Fe property, pending review and approval of permanent facilities, to allow emergency responders to better communicate with their departments, other agencies, and the public. Seven short cell towers have been built on City land pursuant to these proclamations. (Doc. 19) at 2-3, 20.

III.    *Standard of Review*

In evaluating a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, or under Rule 12(b)(6) for failure to state a claim, the Court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to [Plaintiffs]." *Garling v. United States Environmental Protection Agency*, 849 F.3d 1289, 1292 (10th Cir. 2017). Nevertheless, the Court will not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is also not "bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. 544, 570 (2007)). In addition, the Court must "draw on its judicial experience and common sense" to determine whether the facts as alleged "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

IV.    *Discussion*

   A. *Plaintiffs' Standing*

Federal courts are of limited jurisdiction, empowered by Article III of the Constitution to hear only cases or controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992); *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017). An "essential and unchanging part of the case-or-controversy requirement" is the "irreducible constitutional minimum of standing." *Lujan*, 504 U.S. at 560. "The burden of establishing a federal court's subject matter jurisdiction rests upon the party asserting jurisdiction." *Safe Streets Alliance*, 859 F.3d at 878. To satisfy this burden, Plaintiffs must show: (1) they have suffered an "injury in fact" that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged actions of Defendants; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Collins v. Daniels*, 916 F.3d 1302, 1312 (10th Cir. 2019).

   1. *Injury in Fact*

On January 11, 2018, Plaintiffs brought a similar suit against the City of Santa Fe challenging Ordinance Nos. 2016-42 and 2017-18 and the Mayor's 2017 proclamations. *Santa Fe Alliance, et al. v. City of Santa Fe*, Civ. No. 18-32 JAP/SCY. In that case, the Honorable James A. Parker found that Plaintiffs did not have standing to bring their claims because their allegations of physical harm were based on generalized statements of increased health incidents and risks related to the worldwide proliferation of RF radiation, which were not traceable to the challenged ordinances or proclamations. Civ. No. 18-32, Doc. 40, at 7-9. At that time, Plaintiffs alleged the possibility of future harm as a result of the City of Santa Fe's plans to authorize wireless telecommunications facilities on public rights-of-way. However, because Plaintiffs had

"no information as to whether any new facilities would be placed near Plaintiffs' homes or businesses or in any locations that will result in concrete, actual, and particularized injury to Plaintiffs," the court concluded Plaintiffs' allegations were not sufficient to establish an injury in fact and dismissed Plaintiffs' claims without prejudice for lack of standing.  *Id.* at 8.

Here, however, Plaintiffs have alleged specific injuries stemming from Defendants' actions.  Specifically, Plaintiffs state Section 704 precluded City councilors from considering their testimony about RF effects at the hearings held on Ordinance Nos. 2016-42 and 2017-18. (Doc. 19) at 29-30.  Plaintiffs claim this violated their due process and First Amendment rights and resulted in the City awarding franchises to five telecommunications companies and allowing the franchisees to install antennae on public rights-of-way.  *Id.* at 33-34.  Moreover, Plaintiffs Firstenberg and Steinhoff state that the towers built pursuant to the Mayor's proclamations have restricted their mobility and access to City services and functions, such as public meetings.  *Id.* at 19-20, 31-32 (noting the towers are near a fire station, the City's Water Division, a public recreation center, a public community center, a public parking garage, the City's water treatment plant, and City hall).  Therefore, because Plaintiffs now allege that RFEs from facilities that were authorized by Defendants are affecting them in concrete ways and will continue to do so, their injuries are concrete and particularized, actual and imminent, and not conjectural or hypothetical. *See Lujan*, 504 U.S. at 560; *cf. Ctr. for Biological Diversity v. United States Dept. of Interior*, 563 F.3d 466, 478 (D.C. Cir. 2009) (finding no standing because plaintiffs could "only aver that any significant adverse effects of climate change 'may' occur at some point in the future"). Accordingly, the Court finds that Plaintiffs have remedied the deficiencies in their previous lawsuit regarding their allegations of injuries in fact.

2.   *Traceable to Defendants' Actions*

The United States argues Plaintiffs cannot establish standing because their injuries are not traceable to the actions of a federal agency or officer.  (Doc. 46) at 17-24.  Because Section 704 of the TCA does not mandate or prohibit any state or local action, and instead merely eliminates one factor from consideration when states and localities make decisions regarding the placement of wireless telecommunications facilities, the United States asserts that Plaintiffs' "quarrel lies, not with the United States, but with the State Defendants' independent land-use decisions."  *Id.* at 20.  Similarly, the United States argues it is immune from Plaintiffs' claims because Plaintiffs fail to allege that an agency or federal officer has acted improperly or failed to act.  *Id.* at 22-24.

Congress enacted the TCA "to provide a pro-competitive, deregulatory national policy framework to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services." *Cellular Telephone Co. v. Town of Oyster Bay*, 166 F.2d 490, 493 (2d Cir.1999) (quoting H.R. Conf. Rep. No. 104-458, at 206 (1996), reprinted in 1996 U.S.C.C.A.N. 124, 124).  One way Congress sought to encourage the rapid expansion of telecommunication services was to reduce the impediments imposed by local governments on the installation of facilities for wireless service.  *See City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005).  Therefore, Congress added § 332(c)(7) to impose some limits on state and local governmental authority to regulate the location, construction, and modification of such facilities.  *Id.*

It has been well established that Congress did not exceed its constitutional authority by enacting these preemption provisions. *See City of New York v. FCC*, 486 U.S. 57, 63-64 (1988) ("[T]he FCC has broad preemption authority [under the TCA].");  *Cellular Phone Taskforce v. FCC*, 205 F.3d 82, 96 (2d Cir. 2000), cert. denied, 531 U.S. 1070 (2001) ("Congress may

8

preempt state and local governments from regulating the operation and construction … of personal wireless communications facilities.").  In *Cellular Phone Taskforce*, the court addressed challenges to the FCC guidelines that established the health and safety standards of RF emissions and compliance guidelines under the National Environmental Policy Act.  205 F.3d at 96.  The Court held the FCC acted reasonably in relying on the American National Standards Institute and National Council on Radiation Protection and Measurements and concluded the TCA's preemption provision did not violate the Tenth Amendment.  *Id.* at 96-97.

Under this framework, a person may sue under the TCA if they are affected by "any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph."  47 U.S.C. § 332(c)(7)(B)(v).  However, Plaintiffs do not allege the facilities authorized by the City or the Mayor's proclamations exceed the RF emission limits established by the FCC or are otherwise inconsistent with the TCA.  Therefore, Plaintiffs lack standing to sue under the TCA.  *See Drago v. Garment*, 691 F.Supp.2d 490, 494 (S.D.N.Y. 2010) (holding plaintiff lacked standing under TCA to enjoin city from erecting wireless facilities because TCA does not allow party to "bring an action in federal court for the adverse effects flowing from the granting of a request to construct personal wireless service facilities").

In addition, when a person is adversely affected by an action or failure to act by a state or local government that is inconsistent with clause iv (which prohibits regulation on the basis of the environmental effects of radio frequency emissions), that party "may petition the [FCC] for relief."  47 U.S.C. § 332(c)(7)(B)(v); *see also* 47 U.S.C. § 151 (vesting TCA's enforcement and regulatory authority in the FCC).  Accordingly, because the United States cannot enforce the provisions of the TCA, Plaintiffs lack standing to bring TCA claims against the United States. *See Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014) (finding no standing where

plaintiff sought relief against defendant with no power to enforce challenged statute because "causation element of standing requires the named defendants to possess authority to enforce the complained-of provision"). The FCC is not a party to this case and Plaintiffs have not moved to add them as a party.[2]

The United States also contends it has not waived sovereign immunity for Plaintiffs' claims. While Congress has waived sovereign immunity in most suits against the United States for non-monetary relief, such suits require the party to "stat[e] a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702; *Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005). Again, Plaintiffs do not bring this action against the FCC and do not claim that a federal official acted or failed to act. Consequently, the Court finds the United States has not waived sovereign immunity for claims alleging violations of the TCA. *See City of Rancho Palos Verdes, Calif. v. Abrams*, 544 U.S. 113, 127 (2005) (holding TCA precludes Section 1983 suits alleging violations of the Act).

Based on the foregoing, the Court concludes that Plaintiffs lack standing to bring claims under the TCA. However, Plaintiffs also raise constitutional claims that Defendants have violated their rights under the First, Fifth, and Fourteenth Amendments by enacting laws that prevent the consideration of environmental and health effects of RFEs when authorizing telecommunications facilities. *See* (Doc. 19) at 37-62 (Counts 1, 2, 3, 4, 18, and 19); (Doc. 56) at 19 (stating Plaintiffs' "injuries have been caused *directly* by the action of the United states in adopting Section 704 and by the FCC in enforcing it"). As such, Plaintiffs' claimed

---

[2] While Plaintiffs state in their response to Defendant United States' Motion to Dismiss that they would like to amend their complaint to add the FCC as a party, this request is not properly before the Court. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.").

constitutional injuries are the result of Defendants' interpretation of and reliance on Section 704.

Moreover, the United States' argument that Plaintiffs' injuries are caused by the State

Defendants' independent land-use decisions is unavailing because "fairly traceable" does not

require a defendant's action to be "the very last step in the chain of causation."  *Bennett v. Spear*,

520 U.S. 154, 169 (1997) (finding plaintiffs had standing to challenge federal law even though

subsequent decisions by other governmental entities also caused harm, explaining "fairly

traceable" prong "does not exclude injury produced by determinative or coercive effect upon the

action of someone else").  Therefore, the Court concludes Plaintiffs' constitutional claims are

fairly traceable to Defendants' actions.  *See Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007)

("The parties' dispute turns on the proper construction of a congressional statute, a question

eminently suitable to resolution in federal court."); *Wilson v. Stocker*, 819 F.2d 943, 947 (10th

Cir. 1987) (finding standing to sue state government official when challenging constitutionality

of state statue); *Cellular Phone Taskforce*, 205 F.3d at 96-97 (considering challenge to

constitutionality of the TCA).

### 3.  *Redressability*

While no Defendant challenges Plaintiffs' standing on the basis of whether their injuries

would be redressable by a favorable decision, Plaintiffs argue in their Notice of Supplemental

Authority that they satisfy this prong.  (Doc. 71).  Plaintiffs rely on *Juliana v. United States*,

where the Ninth Circuit found the plaintiffs lacked standing to bring broad constitutional claims

challenging the government's use and authorization of fossil fuels.  947 F.3d 1159 (9th Cir.

2020).  That court held that the plaintiffs sufficiently alleged injuries in fact that were caused by

the defendants, but found the injuries could not be redressed by the court because the remedy

plaintiffs sought would require the court to demand action by the legislative and executive

branches and engage in policy making, continuous supervision, and remediation.  *Id.* at 1171-72 (stating "it is beyond the power of an Article III court to order, design, supervise, or implement the plaintiffs' requested remedial plan" which "would necessarily require a host of complex policy decisions entrusted … to the wisdom and discretion of the executive and legislative branches") (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128-29 (1992)).

Unlike the plaintiffs in *Juliana*, Plaintiffs here do not ask the Court to demand action by another branch of government or engage in policy making or supervision.  Instead, Plaintiffs seek a ruling that laws that prevent local governments from considering the harmful effects of RFEs are unconstitutional.  Accordingly, Plaintiffs are correct that their claims are distinguishable from those in *Juliana*, where the court emphasized the plaintiffs did not assert the violation of a procedural right or an otherwise "discrete and particularized injury necessary for Article III standing."  *Id.* at 1174.  Therefore, the Court finds Plaintiffs injuries will likely be redressed by a favorable decision.  *See Larson v. Valente*, 456 U.S. 228, 244 n.15 (1982) ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself.  He need not show that a favorable decision will relieve his every injury.").

For the foregoing reasons, the Court concludes that the Plaintiffs have established standing to bring their constitutional claims but lack standing to bring claims under the TCA.

### B.  *Plaintiffs' Federal Claims*

Having found Plaintiffs have standing to bring their constitutional claims, the Court now considers Defendants' motions to dismiss these claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  (Docs. 21 and 46).

*1.  Due Process Claims*

Plaintiffs' First, Second, and Eighteenth Claims allege Section 704, the ordinances amending Chapter 27, the WCAIIA, and the Mayor's proclamations, violate Plaintiffs' substantive and procedural due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.  (Doc. 19) at 37-40, 59-60.  Specifically, Plaintiffs allege that the siting of wireless telecommunications facilities without consideration of their environmental and health effects prevents Plaintiffs from being safe at home, traveling the public streets, working, and otherwise providing for their basic needs.  *Id.*  Defendants argue these claims should be dismissed because Plaintiffs fail to establish a constitutionally cognizable life, liberty, or property interest.  (Doc. 21) at 3-6; (Doc. 25) at 9-10; (Doc. 57) at 11-13; (Doc. 46) at 31-32.

The federal government by the Fifth Amendment, and the states by the Fourteenth Amendment, are prohibited from, among other things, depriving a party of life, liberty, or a protected property interest without due process of law.  U.S. Const. amends. V; XIV, § 1. Procedural due process ensures a party will not be deprived of life, liberty, or property without engaging fair procedures to reach a decision, while substantive due process ensures a party will not be deprived of life, liberty, or property for an arbitrary reason regardless of the procedures used to reach that decision.  *See Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1198 (10th Cir. 2000); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998).

 Plaintiffs assert that telecommunications facilities built on public rights-of-way harm their health, ability to travel, and ability to live in their homes.  (Doc. 22) at 2-9.  Therefore, Plaintiffs argue the laws allowing these facilities without consideration of their RFEs deprive Plaintiffs of their rights to life, liberty, and property.  *Id.* at 38 ("The actions of the City and the State, separately and jointly, have deprived Plaintiffs of the reasonable expectation of a home

without radiation."); *id.* at 39 ("The actions of the Mayor, as enforced by the City, have deprived Plaintiffs of the reasonable expectation of a home without radiation.").  However, to have a constitutionally protected right under the due process clause, a party "clearly must have more than an abstract need or desire for it … [and] must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 409 U.S. 564, 577 (1972).  In addition, to have a legitimate claim of entitlement, there must be "a certainty or a very strong likelihood that the benefit would have been granted." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2nd Cir. 1994).

In *Abraham v. Town of Huntington*, the plaintiffs similarly claimed the town deprived them of their procedural and substantive due process rights because it did not take into account the health effects of RFEs in approving telecommunications facilities on public rights-of-way near the plaintiffs' homes.  2018 WL 2304779, *1-2 (E.D.N.Y.).  In considering these claims, the court noted that Section 704 of the TCA preempted the town from making a siting decision on the basis of the effects of RFEs.  *Id.* at *8 ("Congress intended the FCC act as the exclusive regulator regarding RF interference.").  As a result, the court reasoned that the plaintiffs' requested relief failed as a matter of law so long as there was no factual dispute that the RF interference fell within the FCC guidelines.  *Id.* ("In other words, as long as there is no factual dispute as to whether the RF interference fall[s] within the FCC guidelines, an attempt by the Town to make a determination as to an application or permit based on the risks posed by RF interference would be preempted by federal law.").  In addition, the court found the plaintiffs could not state a claim for procedural or substantive due process violations because "the Plaintiffs cannot show a constitutional entitlement to the denial of a permit for the installation of wireless facilities on public rights-of-way."  *Id.* at *11 ("As the Court has determined that the

Plaintiffs lack a valid property interest in the approval of the installation of wireless facilities on public rights-of-way, the Court need not address the second requirement of a procedural or substantive due process claim.").

Here, Plaintiffs' due process claims fail for the same reasons.  As explained above, the TCA has explicitly preempted states and localities from considering the environmental effects of RFEs in their siting decisions.  Therefore, Plaintiffs' claims fail as a matter of law in that they assert the State, City, and Mayor, have violated their due process rights because they did not consider RFEs.  Moreover, the Tenth Circuit has explained that for land use regulations to "be declared unconstitutional on due process grounds, the provisions must be clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare, and if the validity of the land classification is fairly debatable the legislative judgment must control."  *Messiah Baptist Church v. County of Jefferson, State of Colo.*, 859 F.2d 820, 822 (10th Cir. 1988).  The challenged laws here have been enacted to provide consistent and high-quality telecommunications services and technologies for public safety reasons.  *See City of Ranchos Palos Verdes*, 544 U.S. at 115-16 ("Congress enacted the Telecommunications Act of 1996 to promote competition and higher quality in American Telecommunications services and to encourage the rapid deployment of new telecommunications technologies.") (citation omitted); Chapter 27-1(E) of the Santa Fe City Code ("The purposes of this chapter are to … enhance the ability of the providers of telecommunications services to provide such services to the community quickly, effectively, and efficiently."); (Doc. 19-5, 19-6, 19-7) (Mayor's Proclamations of Emergency authorizing temporary or mobile wireless telecommunications facilities on City property to allow emergency responders to better communicate with their departments, other agencies, and the public because "an emergency exists in the City resulting

15

from insufficient telecommunications capacity in the City, which have caused or are causing

danger, or injury or damage to persons and property within the City").

In response to the City of Santa Fe's Motion to Dismiss, Plaintiffs rely on cases finding a

fundamental right to "bodily integrity" to support their due process claims.  (Doc. 22) at 5-6.  For

example, Plaintiffs rely on *Guertin v. State of Michigan*, where the plaintiffs alleged violation of

their due process rights because government officials supplied lead-contaminated water that

resulted in dangerously high blood-levels.  912 F.3d 907 (6th Cir. 2019).  The Sixth Circuit

explained that a constitutional right to bodily integrity means "individuals possess a

constitutional right to be free from forcible intrusions on their bodies against their will, absent a

compelling state interest."  *Id.* at 919 (citation omitted).  The Court held the plaintiffs sufficiently

pled their due process claims and compared the case to nonconsensual intrusion cases involving

forced medication or government experiments on unknowing and unwilling patients.  *Id.* at 920-

21 (explaining facts of case similar to cases where government is accused of  "[i]nvoluntarily

subjecting nonconsenting individuals to foreign substances with no known therapeutic value—

often under false pretenses and with deceptive practices hiding the nature of the interference").

Here, however, Plaintiffs do not claim their exposure to RFEs is unknowing.  Instead,

Plaintiffs are well-aware of RFEs and have made purposeful decisions to avoid it.  (Doc. 19) at

16-20 (documenting Plaintiffs' actions taken to avoid RFEs).  Plaintiffs also do not allege

Defendants have acted under false pretenses or have hidden RFEs from them.  *See Guertin*, 912

F.3d at 921 (emphasizing bodily integrity due process violation involved plaintiffs unknowingly

receiving substances detrimental to their health while "government officials engaged in conduct

designed to deceive the scope of the bodily invasion"); *see also Washington v. Harper*, 494 U.S.

210, 221-22 (1990) ("The forcible injection of medication into a nonconsenting person's body

16

represents a substantial interference with that person's liberty."). No such allegations have been made here and Plaintiffs have not persuaded the Court to extend the right to bodily integrity to encompass a right to live in an environment free from RFEs. *See Guertin*, 912 F.3d at 921-22 ("[T]he Constitution does not guarantee a right to live in a contaminant-free, healthy environment."); *Nat'l Sea Clammers Ass'n v. City of New York*, 616 F.2d 1222, 1238 (3d Cir. 1980), *vacated on other grounds sub nom.*, *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1 (1981) ("[T]here is no constitutional right to a pollution-free environment."); *Lake v. City of Southgate*, 2017 WL 767879, at *4 (E.D. Mich.) ("[W]henever federal courts have faced assertions of fundamental rights to a 'healthful environment' or to freedom from harmful contaminants, they have invariably rejected those claims."); *Barnett v. Carberry*, 2010 WL 11591776, at *8 (D.Conn.), aff'd 420 Fed. Appx. 67 (2d Cir. 2011) ("[T]here is no recognized constitutional right to a healthful environment or to be free from a particular level of [electromagnetic field] exposure.").

For the reasons stated above, Plaintiffs due process claims must be dismissed because they have not alleged a violation of a constitutionally protected right.

### 2. *Takings Claim*

Plaintiffs also claim that the ordinances amending Chapter 27 and the WCAIIA have resulted in an unconstitutional taking because the placement of wireless telecommunications facilities on public rights-of-way "will render [Plaintiffs'] homes and businesses uninhabitable and unusable and is an unlawful confiscation of property without compensation." (Doc. 19) at 40 (Third Claim).

In order to state a claim for an unconstitutional taking, a plaintiff must allege either a physical taking, a "total regulatory taking," an interference with the plaintiff's rights in the

17

property, or an improper land use condition. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 548 (2005). Plaintiffs argue the challenged laws result in an unconstitutional taking because "RF radiation from a cell tower in front of someone's house is a permanent physical invasion of his or her property," and can "deny that person all economically beneficial or productive use of that property." (Doc. 22) at 8. However, in order to state a takings claim, a plaintiff must allege that, as the owner of the property, the plaintiff "has been called to sacrifice all economically beneficial uses in the name of the common good, that is to leave his property economically idle." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1018 (1992). Plaintiffs do not allege their property has been affected or that its value has decreased. Instead, Plaintiffs state that "no wireless telecommunications facilities in Santa Fe are on the sidewalk in front of homes and businesses." (Doc. 22) at 9. Because Plaintiffs do not claim a physical occupation of their property, or that their property has been singled out, restricted, or regulated in any way, the Court concludes their takings claim fails as a matter of law. *See, e.g., United States v. 1,606.00 Acres of Land, Situated in Texas Cnty., State of Okla.*, 698 F.2d 402, 407 (10th Cir. 1983) ("Possible future taking of property cannot give rise to a present action, … and threat to condemn one's property does not constitute a taking."); *Long Island Lighting Co. v. Suffolk County, N.Y.*, 604 F.Supp. 759,  (E.D.N.Y. 1985) (rejecting takings claim based on plaintiff's allegation that its property may be taken at future time).

### 3. First Amendment Claims (Right to Petition and Freedom of Speech)

Plaintiffs next claim their First Amendment rights to petition and for free speech have been violated because the ordinances amending Chapter 27, the WCAIIA, and Section 704, prevent them from testifying about the harmful effects of RF radiation produced by telecommunications facilities. (Doc. 19) at 41 (Fourth Claim) and 60-63 (Nineteenth and

18

Twentieth Claims).  Plaintiffs assert that because Section 704 prohibits local regulation of telecommunications facilities on the basis of RFEs, Plaintiffs' speech about the effects of RFEs has been disregarded and unconstitutionally restricted.  *Id.* at 62.

The First Amendment guarantees "the right of the people … to petition the Government for a redress of grievances."  *McDonald v. Smith*, 472 U.S. 479, 481 (1985).  In addition, the First Amendment prohibits the government from suppressing speech on the basis of its content, including in advance of its actual expression.  *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 570 (1976) (explaining "prior restraint" on speech is law, regulation, or judicial order that preemptively suppresses speech or provides for its suppression at discretion of government officials and based on speech's content).  However, "[t]o qualify as a content-based 'regulation of speech,' a statute must restrict speech or expressive conduct in the first place."  *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1104 (10th Cir. 2006); *U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1232 (10th Cir. 1999) ("As a threshold requirement for the application of the First Amendment, the government action must abridge or restrict protected speech.").

None of the laws Plaintiffs are challenging prohibit speech on the effects of RFEs.  Indeed, Plaintiffs state they "have participated in every approval process and have testified to their injuries and losses at every public hearing for every proposed telecommunications ordinance and every proposed telecommunications facility in Santa Fe from 2005 to the present." (Doc. 19) at 26.  In addition, Plaintiffs state that at the hearings held on Ordinance Nos. 2016-42 and 2017-18, "[t]he preponderance of the public testimony … was about health."  *Id.* at 29.  Plaintiffs have also filed multiple lawsuits about this issue.  *See, e.g. Santa Fe Alliance, et al. v. City of Santa Fe*, Civ. No. 18-32 JAP/SCY, *Firstenberg v. City of Santa Fe*, Civ. No. 11-8

JAP/WDS.  Therefore, Plaintiffs fail to state a claim that they have not been able to petition or speak about the health effects of RFEs.

Instead, the crux of Plaintiffs' First Amendment claims is that, because of the preemptive effects of Section 704, local government officials are unable to act on Plaintiffs' complaints. This, however, is not a proper basis for a First Amendment claim.  *See Minnesota State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment … suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues."); *Initiative & Referendum*, 450 F.3d at 1101 ("The First Amendment ensures that all points of view may be heard; it does not ensure that all points of view are equally likely to prevail."); *Marijuana Policy Project v. United States*, 304 F.3d 82, 85 (D.C. Cir. 2002) (rejecting idea of First Amendment challenge to preemptive statutes, stating "no one would argue that such limitations violate the First Amendment rights of state voters who supported the preempted legislation"); *Jaeger v. Cellco P'nership*, 936 F.Supp.2d 87, 94 (D.Conn. 2013) (dismissing plaintiff's right to petition claim because she participated in council hearings and pursued her grievances in state and federal court, concluding "Jaeger has not been deprived of her right to petition the government; she has simply been an unsuccessful petitioner").

As for Plaintiffs' claim that people who are "injured, sickened and/or killed by [RF] radiation" are deprived of a remedy by Section 704's preemption provision, Plaintiffs may seek relief from Congress or the FCC as to allowable RFE levels.  *See Cellular Phone Taskforce*, 205 F.3d at 90 (explaining FCC promulgated RF exposure limits in 47 C.F.R. § 1.1310, Table 1 and "is the entity with the express authority to regulate acceptable RF emissions levels for cellular tower facilities"); *Abraham*, 2018 WL 2304779, at *8 (explaining "Congress intended the FCC

act as the exclusive regulator regarding RF interference," and "[t]he FCC has utilized its rule-making authority to regulate RF interference" as set forth at 47 C.F.R. § 73.318).  For example, under the Administrative Procedures Act, an "interested person" may petition a federal agency "for the issuance, amendment, or repeal of a rule," the agency must decide the petition "within a reasonable time," and the courts may review any "final agency action" for abuse of discretion.  5 U.S.C. §§ 553(b)-(e), 704, 706(1)-(2).  Therefore, Section 704 does not prevent Plaintiffs from seeking more stringent RFE standards.  *See Cellular Phone Taskforce*, 205 F.3d at 90 ("The argument that the FCC should create greater safety margins in its guidelines to account for uncertain data is a policy question, not a legal one."); *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 320 (6th Cir. 2017) ("Allowing RF-emissions-based tort suits would … shift the power to regulate RF emissions away from the FCC and into the hands of courts and state governments."); *Patchak v. Jewell*, 109 F. Supp. 3d 152, 163 (D.D.C. 2015) (finding no infringement on right to petition where Congress withdrew federal jurisdiction for plaintiff's claims, "but he remains free to petition federal agencies … for relief"); *Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000) (explaining First Amendment right to petition "is merely a right to petition the appropriate government entity," not to "make every government employee a petition receiver"); *Bakay v. Yarnes*, 2005 WL 2454168, at *7 (W.D. Wash) (explaining First Amendment provides "absolute and fundamental right to petition the government through the political process" but does not provide a "similar right to bring lawsuits").

For these reasons, the Court concludes that Plaintiffs have failed to state a claim that their First Amendment rights have been violated.

#### 4. Claim Regarding Term "Environmental" in Section 704

Plaintiffs' final federal claim is that, in prohibiting states from adopting stricter regulations than the FCC regarding the environmental effects of RF radiation, Congress did not intend to include "health" as part of the term "environmental."  (Doc. 19) at 58-59 (Seventeenth Claim); *see also* (Doc. 22) at 10 (asserting the "ordinary, dictionary" meaning of the term "environmental" does not include human health).  Accordingly, Plaintiffs argue, Section 704 does not preempt state and local governments from considering how RF radiation affects human health when authorizing telecommunications facilities.  *Id.* at 10-11.  Defendants dispute Plaintiffs' interpretation of Section 704 and argue Plaintiffs do not state a claim for relief.  (Doc. 21) at 10; (Doc. 46) at 12, 26 n.5.

When asked to construe a statute, the Court begins with its plain language.  *See Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002); *see also Caminetti v. United States*, 242 U.S. 470, 485 (1917) ("It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms.").  Therefore, the Court must first determine if the language at issue has a plain and unambiguous meaning and, if it does, the Court's inquiry ends. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).

Section 332(c)(7)(B)(iv) provides, "No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions."  The term "environmental effects" is defined as the "natural or artificial disturbance of the physical,

22

chemical, or biological components that make up the environment." *See* Black's Law Dictionary, 238 (11th ed. 2019). Plaintiffs cite to no authority that this definition excludes humans. Instead, other courts considering this issue have held the term "environmental effects" includes effects on human health. *See Freeman v. Burlington Broadcasters, Inc.*, 204 F.3d 311, 325 (2d Cir. 2000) (holding "environmental effects" in Section 704 includes effects on human health); *Cellular Telephone Co.*, 166 F.3d at 494 n.3 (same); *Firstenberg v. City of Santa Fe, N.M.*, 782 F.Supp.2d 1262, 1271 (D.N.M. 2011), *rev'd on other grounds by* 696 F.3d 1018 (10th Cir. 2012) ("In § 332(c)(7)(B)(iv), Congress expressed a clear intent to preempt local governing authorities from regulating RFEs on the basis of their environmental and health effects."); *T-Mobile Northeast LLC v. Town of Ramapo*, 701 F.Supp.2d 446, 460 (S.D.N.Y. 2009) ("Environmental effects within the meaning of [§ 332(c)(7)(B)(iv)] … include health concerns about the biological effects of RF radiation.").

In addition, a review of the regulations under which the FCC sets acceptable RF emission levels makes plain that the FCC considers the human health effects of RF radiation. *See* 47 C.F.R. § 1.1310 (providing "specific absorption rate" used to evaluate human RF radiation exposure limits). Moreover, Plaintiffs' request that the Court interpret the meaning of "environmental effects" in a manner that circumscribes the FCC's preemptive authority "is arguably an attempt [sic] usurp the FCC's authority to regulate RF emissions, a task Congress has delegated to the FCC." *Jaeger*, 2010 WL 965730, at *10. Because Congress has granted the FCC authority to regulate RFEs from telecommunications facilities, the proper procedure to challenge the FCC's policies concerning RFEs is to petition the FCC. *See* 47 C.F.R. § 1.1307(c) ("If an interested person alleges that a particular action, otherwise categorically excluded, will have a significant environmental effect, the person shall submit to the Bureau responsible for

processing that action a written petition setting forth in detail the reasons justifying or circumstances necessitating environmental consideration in the decision-making process.").

      For these reasons, the Court concludes the plain meaning of the term "environmental effects" includes effects on human health.  Additionally, to exclude the application of Section 332(c)(7)(B)(iv) from human health considerations is clearly at odds with congressional intent and FCC policy on RF emissions.  Therefore, the Court concludes this claim fails as a matter of law.

### V. Conclusion

      For the reasons stated above, the Court finds that none of Plaintiffs' federal claims state a claim for relief.  The Court notes that other courts have consistently dismissed similar claims. *See Firstenberg*, 782 F.Supp.2d at 1271, *rev'd on other grounds by* 696 F.3d 1018 ("Because Plaintiff asked for relief that would require the City to regulate the transmissions from AT&T's base stations for the purpose of controlling the 'environmental effects' of [RFEs], Plaintiff's claim fails."); *Jaeger*, 2010 WL 965730, at *4 (D. Conn.), aff'd 402 Fed. Appx. 645 (2nd Cir. 2010) ("Because Jaeger's first four claims challenge the Council's siting determination on the basis of the effects of RF emissions, they fail as a matter of law; the Council is preempted by the TCA from denying an application on the basis of the effects of RF emissions that fall within the permissible range set by the FCC."); *Drago,* 691 F. Supp. 2d at 494 ("There is no language in the [TCA] to allow someone to bring an action in federal court for adverse effects flowing from the granting of a request to construct personal wireless service facilities."); *Abraham*, 2018 WL 2304779, at *8 ("[A]s long as there is no factual dispute as to whether RF interference fall within the FCC guidelines, an attempt by the Town to make a determination as to an application or permit based on the risks posed by RF interference would be preempted by federal law."); *cf.*

*Sprint Spectrum L.P. v. Mills*, 283 F.3d 404 (2d Cir. 2002) (holding TCA preempts regulation on basis of RFEs but does not preempt mutually agreed upon provisions in lease agreement even if terms of lease agreement embodied stricter RF emission limits than those provided by the FCC).

Having concluded all of Plaintiffs' federal claims should be dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction."); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("[T]he court may, and usually should, decline to exercise jurisdiction over any remaining state claims."); *Lucero v. Gordon*, 786 Fed. Appx. 833, 836-37 (10th Cir. 2019) ("As a general matter, a court will decline supplemental jurisdiction if the underlying [federal] claims are dismissed before trial.").

IT IS THEREFORE ORDERED that Defendant City of Santa Fe's Amended Motion to Dismiss for Failure to State a Claim, (Doc. 21), and Defendant United States' Motion to Dismiss, (Doc. 46), are GRANTED and Plaintiffs' federal claims are DISMISSED with prejudice as to these Defendants.

IT IS FURTHER ORDERED that, because Plaintiffs' federal claims have been dismissed with prejudice, the Court DECLINES to exercise supplemental jurisdiction over Plaintiffs' state law claims, and those claims are DISMISSED without prejudice.

UNITED STATES DISTRICT JUDGE

25